# No. 24-1205

# In the United States Court of Appeals
## FOR THE FOURTH CIRCUIT

JOY G. FRANKLIN, on behalf of herself and all others similarly situated

*Plaintiff - Appellee*

v.

DUKE UNIVERSITY; THE RETIREMENT BOARD FOR DUKE UNIVERSITY

*Defendants - Appellants*

and

JOHN/JANE DOES 1-10

*Defendant*

On Appeal from the U.S. District Court for the Middle District of North Carolina
No. 1:23-cv-00833, The Honorable Catherine C. Eagles

## BRIEF OF APPELLANTS

DIXIE T. WELLS
ELLIS & WINTERS LLP
300 North Greene Street, Suite 800
Greensboro, NC  27401
(336) 217-4197

JEREMY P. BLUMENFELD
MARY ANN F. MCNULTY
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA  19103
(215) 963-5000

MICHAEL E. KENNEALLY
ABBEY M. GLENN
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 739-3000

*Counsel for Defendants-Appellants*

# DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Defendants-Appellants Duke University and the Retirement Board for Duke University make the following disclosure:

1.      Is party/amicus a publicly held corporation or other publicly held entity?

   No.

2.      Does party/amicus have any parent corporations?

   No.

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?

   No.

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?

   No.

5.      Is party a trade association?

   No.

6.      Does this case arise out of a bankruptcy proceeding?

   No.

7.      Is this a criminal case in which there was an organizational victim?

   No.

Dated: July 15, 2024

s/ Jeremy P. Blumenfeld
JEREMY P. BLUMENFELD

*Counsel for Defendants-Appellants*

## TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT .................................................................i

TABLE OF AUTHORITIES ..............................................................iv

INTRODUCTION ...............................................................................1

STATEMENT OF JURISDICTION...................................................5

STATEMENT OF ISSUES ................................................................6

STATEMENT OF THE CASE...........................................................7

I.      Statutory Background ...........................................................7

        A.      The Employee Retirement Income Security Act ................7

        B.      The Federal Arbitration Act .........................................9

II.     Factual Background .............................................................10

        A.      The Employees' Retirement Plan of Duke University.......10

        B.      Plaintiff's Allegations ...............................................11

III.    Procedural History ..............................................................13

SUMMARY OF ARGUMENT .........................................................16

STANDARD OF REVIEW ..............................................................18

ARGUMENT ....................................................................................18

I.      The Plan's arbitration provision is valid and binding and must be
        enforced under ERISA and the FAA...........................................18

        A.      Provisions in ERISA plans, including plan amendments, are
                binding contractual commitments. ..................................19

        B.      The FAA and ERISA require the Plan's arbitration provision to
                be enforced to the same degree as any other plan provision...............21

# TABLE OF CONTENTS

(continued)

**Page**

II.    Plaintiff's Section 1132(a)(2) claims should either be dismissed for
lack of standing or, in the alternative, compelled to arbitration...................29

    A.    Plaintiff lacks standing to seek relief for the Plan. ............................31

    B.    Alternatively, if Plaintiff has standing to sue for individualized
relief under Section 1132(a)(2), those claims must be arbitrated. ......36

III.    In all events, the district court should not be allowed to adjudicate the
Section 1132(a)(2) claims until the arbitration has concluded......................38

CONCLUSION.........................................................................................41

CERTIFICATE OF COMPLIANCE.......................................................43

iii

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aetna Health Inc. v. Davila,*
542 U.S. 200 (2004)................................................................7

*Amaro v. Cont'l Can Co.,*
724 F.2d 747 (9th Cir. 1984) ............................................26

*Amos v. Amazon Logistics, Inc.,*
74 F.4th 591 (4th Cir. 2023) .............................................18

*Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.,*
847 F.2d 475 (8th Cir. 1988) ............................................25

*Arthur Andersen LLP v. Carlisle,*
556 U.S. 624 (2009)...........................................................25

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011).............................................................1

*Barrowclough v. Kidder, Peabody & Co.,*
752 F.2d 923 (3d Cir. 1985) .............................................26

*Benchmark Ins. Co. v. SUNZ Ins. Co.,*
36 F.4th 766 (8th Cir. 2022) ...............................................5

*Bender v. Williamsport Area Sch. Dist.,*
475 U.S. 534 (1986).............................................................5

*Bird v. Shearson Lehman/Am. Exp., Inc.,*
926 F.2d 116 (2d Cir. 1991) .............................................25

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan,*
201 F.3d 335 (4th Cir. 2000) ............................................19

*BP P.L.C. v. Mayor of Balt.,*
141 S. Ct. 1532 (2021).........................................................5

*Canteen v. Charlotte Metro Credit Union,*
900 S.E.2d 890 (N.C. 2024)..............................................24

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011)...........................................................................35

*Coleman v. Nationwide Life Ins. Co.*,
    969 F.2d 54 (4th Cir. 1992) ...........................................................21

*Conkright v. Frommert*,
    559 U.S. 506 (2010)...........................................................................7

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995)...........................................................................21

*Dalton v. Dow Chem. Co.*,
    No. 18-cv-1494, 2019 WL 2427236 (S.D.W. Va. June 10, 2019) ....................40

*Denzler v. Questech, Inc.*,
    80 F.3d 97 (4th Cir. 1996) ...........................................................1, 19

*Disability Rts. S.C. v. McMaster*,
    24 F.4th 893 (4th Cir. 2022) ...........................................................18

*Dorman v. Charles Schwab Corp.*,
    934 F.3d 1107 (9th Cir. 2019) ...........................................................26, 28

*Duke v. Luxottica U.S. Holdings Corp.*,
    No. 21-cv-6072, 2023 WL 6385389 (E.D.N.Y. Sept. 30, 2023)............29, 31, 32

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018)...........................................................9, 10, 21, 26

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)...........................................................................7

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)...........................................................................22

*Haley v. Paul Revere Life Ins. Co.*,
    77 F.3d 84 (4th Cir. 1996) ...........................................................1, 19

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
   571 U.S. 99 (2013)..............................................................................8, 19, 20, 27

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999)..............................................................................31

*In re Becker*,
   993 F.3d 731 (9th Cir. 2021) ........................................................3, 28

*In re Mathias*,
   867 F.3d 727 (7th Cir. 2017) ........................................................2, 27

*JER, LLC v. Burchfield Automation, L.L.C.*,
   No. 14-cv-3253, 2015 WL 13649450 (D. Md. Apr. 16, 2015) ........................40

*JRM, Inc. v. HJH Cos., Inc.*,
   883 S.E.2d 217 (N.C. Ct. App. 2023)................................................23

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
   581 U.S. 246 (2017)..............................................................................*passim*

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   552 U.S. 248 (2008)..............................................................10, 11, 32, 35

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)..............................................................................21

*Manuel-Clark v. Manpowergroup Short-Term Disability Plan*,
   No. 19-cv-147, 2019 WL 5558406 (E.D.N.C. Oct. 28, 2019) ........................28

*Mass. Mut. Life. Ins. Co. v. Russell*,
   473 U.S. 134 (1985)..............................................................4, 29, 32, 34

*Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*,
   250 F. Supp. 3d 13 (E.D. Va. 2017) ................................................40

*Mey v. DIRECTV, LLC*,
   971 F.3d 284 (4th Cir. 2020) ........................................................18, 22

vi

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022) ...........................................................................3, 9

*Namisnak v. Uber Techs., Inc.*,
    971 F.3d 1088 (9th Cir. 2020) ...................................................................6

*Nettles v. Midland Funding LLC*,
    983 F.3d 896 (7th Cir. 2020) ....................................................................6

*Platt v. Sodexo, S.A.*,
    No. 22-cv-2211, 2023 WL 4832660 (C.D. Cal. July 25, 2023) ........................24

*Plotnick v. Comput. Scis. Corp. Deferred Comp. Plan for Key Execs.*,
    875 F.3d 160 (4th Cir. 2017) ......................................................*passim*

*Ret. Comm. of DAK Ams. LLC v. Brewer*,
    867 F.3d 471 (4th Cir. 2017) .......................................19, 20, 21, 22

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
    490 U.S. 477 (1989).................................................................................26

*S.C. Wildlife Fed'n v. Limehouse*,
    549 F.3d 324 (4th Cir. 2008) ...................................................................6

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974).................................................................................27

*Scott v. Fam. Dollar Stores, Inc.*,
    733 F.3d 105 (4th Cir. 2013) ...................................................................6

*Smith v. Aegon Cos. Pension Plan*,
    769 F.3d 922 (6th Cir. 2014) ....................................................*passim*

*Smith v. Aegon USA, LLC*,
    770 F. Supp. 2d 809 (W.D. Va. 2011)..............................................28

*Smith v. Bd. of Directors of Triad Mfg., Inc.*,
    13 F.4th 613 (7th Cir. 2021) ...................................................................26

vii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Smith v. Spizzirri*,
144 S. Ct. 1173 (2024)......................................................................9, 30, 38

*Spacek v. Mar. Ass'n*,
134 F.3d 283 (5th Cir. 1998) .................................................................23

*Summer Rain v. Donning Co./Publ'rs, Inc.*,
964 F.2d 1455 (4th Cir. 1992) .................................................39, 40, 41

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020).......................................................................*passim*

*United McGill Corp. v. Stinnett*,
154 F.3d 168 (4th Cir. 1998) .........................................................20, 21

*US Airways, Inc. v. McCutchen*,
569 U.S. 88 (2013)....................................................................3, 19, 20

*Varity Corp. v. Howe*,
516 U.S. 489 (1996).......................................................................*passim*

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022)..............................................................................3, 27

*Wellington-Sears & Co. v. Dize Awning & Tent Co.*,
147 S.E. 13 (N.C. 1929).......................................................................23

**STATUTES & CONSTITUTIONAL PROVISIONS**

9 U.S.C. § 402..........................................................................................9

28 U.S.C. § 1331 ......................................................................................5

28 U.S.C. § 1447 ......................................................................................5

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

Employee Retirement Income Security Act of 1974

    29 U.S.C. § 1001 .................................................................19, 25, 26

    29 U.S.C. § 1002 .........................................................................10, 11

    29 U.S.C. § 1053 .................................................................13, 39, 41

    29 U.S.C. § 1055 .................................................................13, 39, 41

    29 U.S.C. § 1102 ...........................................................................7, 20

    29 U.S.C. § 1104 .........................................................................*passim*

    29 U.S.C. § 1109 .........................................................................*passim*

    29 U.S.C. § 1132 .........................................................................*passim*

    29 U.S.C. § 1144 .........................................................................22, 26

Federal Arbitration Act

    9 U.S.C. § 2 ..................................................................................1, 9

    9 U.S.C. § 3 .................................................................9, 38, 40

    9 U.S.C. § 4 ......................................................................................9

    9 U.S.C. § 16 ..................................................................................5, 6

U.S. CONST. art. III ...........................................................................*passim*

**RULES**

FED. R. APP. P. 4 ....................................................................................6

FED. R. CIV. P. 12 .................................................................13, 14, 15, 39

## INTRODUCTION

The underlying factual and legal merits of this dispute are complicated—involving the calculation of Plaintiff's monthly "joint and survivor annuity" benefit under Duke University's pension plan. But this appeal does not turn on the merits of the parties' dispute. It turns on a straightforward issue of first impression for this Circuit: whether courts must enforce an arbitration provision contained within the terms of a benefit plan governed by the Employee Retirement Income Security Act ("ERISA"). Although this Court has not previously addressed this question, well-settled legal principles provide a ready answer. This Court has long recognized that ERISA plans are contractual documents governed by the federal common law of contracts. *See, e.g.*, *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 88 (4th Cir. 1996); *Denzler v. Questech, Inc.*, 80 F.3d 97, 101 (4th Cir. 1996). So, like any other contractual arbitration provision, an arbitration provision in an ERISA plan must be enforced under the Federal Arbitration Act ("FAA"). *See, e.g.*, 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms[.]" (citations omitted)).

The district court disagreed and denied Defendants' motion to compel arbitration. In its view, the FAA and ERISA do not require enforcing the arbitration provision in the Duke plan because the provision was added through a plan

amendment and Plaintiff did not affirmatively agree to the amendment.  Even so, the

court recognized that ERISA generally gives plan sponsors large leeway to amend

their plans, that participants are bound by those amendments, and that the plan here

was amended in accordance with its terms.  Yet the court determined that plan

amendments favoring arbitration are subject to a higher standard than other types of

plan amendments.  In particular, the district court held that an arbitration provision

in an ERISA plan—unlike any other provision of that ERISA plan—requires

Plaintiff's personal agreement.

This conclusion finds no support in either the FAA or ERISA.  Just the

opposite, such a ruling violates the FAA by treating arbitration provisions less

favorably than other sorts of plan provisions.  And it violates ERISA by disregarding

lawfully adopted plan terms.

Indeed, if the plan amendment here were a forum-selection clause rather than

an arbitration clause, there would be no question about its enforceability.  Multiple

courts of appeals have held that forum-selection clauses in ERISA plans are valid

and enforceable regardless of whether the plan participant affirmatively agrees to

them.  *See, e.g.*, *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 929-930 (6th Cir.

2014); *In re Mathias*, 867 F.3d 727, 732 (7th Cir. 2017).  Under the FAA's "equal-

treatment" rule, courts may not "single[] out arbitration agreements for disfavored

treatment."  *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 248, 251

(2017). Rather, "a court must hold a party to its arbitration contract just as the court would to any other kind." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). So if courts would enforce a forum-selection clause adopted by plan amendment, they must likewise enforce an arbitration clause adopted that way. *See, e.g.*, *In re Becker*, 993 F.3d 731, 733 (9th Cir. 2021) (recognizing that under Ninth Circuit precedent, plan sponsor could have lawfully included an arbitration provision in its plan rather than a forum-selection clause); *cf. Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) ("[A]n arbitration agreement is 'a specialized kind of forum-selection clause[.]'" (citation omitted)).

Nothing in ERISA compels a different result. On the contrary, ERISA's "statutory scheme . . . is built around reliance on the face of written plan documents." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100-101 (2013) (citation omitted). The FAA and ERISA alike require enforcing the plan's arbitration provision and compelling Plaintiff's ERISA claims under 29 U.S.C. § 1132(a)(3) to arbitration.

The second issue in this appeal is whether Plaintiff may litigate her ERISA claims under 29 U.S.C. § 1132(a)(2), which in tandem with 29 U.S.C. § 1109(a) allows recovery of plan losses. Under Supreme Court precedent, individual participants in a defined benefit pension plan (like the Duke plan here) derive no personal benefit from an increase in plan assets and thus lack Article III standing to recover losses on behalf of the plan. *See Thole v. U.S. Bank N.A.*, 590 U.S. 538,

542-544 (2020).  Relying on this Supreme Court precedent, Defendants argued that Plaintiff's Section 1132(a)(2) claims must be dismissed for lack of standing.

The district court again disagreed.  It concluded, despite *Thole*, that Plaintiff has standing to bring these claims because she may use Section 1132(a)(2) to obtain relief that would benefit her individually—namely, requiring the Duke plan to pay her (and other putative class members) "fully ERISA-compliant benefits in the future."  JA226 (citation omitted).  That was error because the Supreme Court has held that Section 1132(a)(2) "does not provide a remedy for individual beneficiaries."  *Varity Corp. v. Howe*, 516 U.S. 489, 516 (1996).  The provision authorizes no relief "except for the plan itself."  *Mass. Mut. Life. Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985).  Section 1132(a)(2) claims are thus representative claims brought on behalf of the plan to obtain remedies for the plan.  *See id.* at 141 n.9.  Because the district court's standing determination rests on a construction of Section 1132(a)(2) that the Supreme Court has rejected, it must be reversed, too.

Alternatively, if individualized relief is available under Section 1132(a)(2), those claims belong in arbitration alongside Plaintiff's Section 1132(a)(3) claims. The district court treated Plaintiff's Section 1132(a)(2) claims as falling outside the scope of the Duke plan's arbitration provision because the provision requires arbitration to proceed on an individual basis only and prohibits proceeding on a representative basis.  But if Plaintiff can use Section 1132(a)(2) to seek individual

relief, her claims under that section cannot fall within the arbitration provision's carveout.  Either way, none of Plaintiff's claims belong in federal court.  The district court's contrary decision should be reversed.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because Plaintiff asserts claims under ERISA.  This Court has appellate jurisdiction under 9 U.S.C. § 16(a)(1)(A) and (B) because the district court's order denied Defendants' motion to compel arbitration and stay the action.

Because Section 16(a)(1)(A) and (B) provide for appellate jurisdiction over the district court's "order," the Court's jurisdiction extends to the entirety of the order, including the holding that Plaintiff has Article III standing.  *See, e.g.*, *Benchmark Ins. Co. v. SUNZ Ins. Co.*, 36 F.4th 766, 770-771 (8th Cir. 2022) (addressing challenge to subject matter jurisdiction as a threshold issue because 9 U.S.C. § 16(a)(1)(B) created "jurisdiction to review the entire district court order"); *cf. BP P.L.C. v. Mayor of Balt.*, 141 S. Ct. 1532, 1538 (2021) (construing 28 U.S.C. § 1447(d) as "allow[ing] courts of appeals to examine the whole of a district court's 'order,' not just some of its parts or pieces").  This Court has an independent duty to "satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review."  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citation omitted).  Here, that requires considering whether Plaintiff has

Article III standing as a threshold matter. *See, e.g.*, *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 329 (4th Cir. 2008) (addressing standing as a threshold issue in an appeal based on the denial of sovereign immunity); *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899-900 (7th Cir. 2020) (holding that plaintiff's lack of standing required dismissal and precluded court from reaching arbitrability); *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1092 (9th Cir. 2020) (addressing standing as a threshold issue in an appeal under 9 U.S.C. § 16(a)(1)(B)).  In addition, the Court may consider the standing issue under the doctrine of pendent appellate jurisdiction given the interrelationship between the arbitrability and standing issues in this appeal.  *See, e.g.*, *Scott v. Fam. Dollar Stores, Inc.*, 733 F.3d 105, 111 (4th Cir. 2013).

The district court entered its order on February 29, 2024, and Defendants filed a timely notice of appeal on March 7, 2024.  JA221-240; *see* FED. R. APP. P. 4(a)(1)(A).

## STATEMENT OF ISSUES

1.     Whether courts must enforce arbitration provisions in ERISA plans to the same extent that they would enforce other plan provisions.

2.     Whether Plaintiff lacks Article III standing to litigate her Section 1132(a)(2) claims on behalf of her ERISA plan or, alternatively, must arbitrate those claims along with her Section 1132(a)(3) claims.

3.      Whether, if Plaintiff's Section 1132(a)(2) claims may proceed in court, they should be stayed pending arbitration of her Section 1132(a)(3) claims because both claims challenge the same benefit calculations and allege violations of the same underlying ERISA provisions.

## STATEMENT OF THE CASE

### I.    Statutory Background

#### A.    The Employee Retirement Income Security Act

ERISA is "a comprehensive statute for the regulation of employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Like many statutes, it reflects a "careful balancing" of competing aims. *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (citation omitted). On the one hand, Congress wanted to ensure that employees receive the benefits they earned. *Id.* at 516. But at the same time, Congress did not want to impose a regime "so complex that administrative costs, or litigation expenses, unduly discourage employers from offering ERISA plans in the first place." *Id.* at 517 (citation and brackets omitted). Courts therefore approach ERISA mindful of this balance "between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424 (2014) (citation omitted).

At the center of ERISA's framework is the plan document. Every plan must be "established and maintained pursuant to a written instrument." 29 U.S.C.

§ 1102(a)(1).  "This focus on the written terms of the plan is the linchpin of 'a system that is not so complex that administrative costs, or litigation expenses, unduly discourage employers from offering ERISA plans in the first place.'"  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (citation and brackets omitted).

ERISA fiduciaries are subject to a duty of loyalty and a duty of prudence.  29 U.S.C. § 1104(a)(1)(B).  They are personally liable if they breach their fiduciary duties and must make good any losses they cause to the plan.  29 U.S.C. § 1109(a).  Plan fiduciaries' obligations are enforceable through a series of rights of action found in 29 U.S.C. § 1132(a).  Two are relevant in this case.  First, the U.S. Department of Labor, a plan participant or beneficiary, or a plan fiduciary may sue "for appropriate relief under [29 U.S.C. §] 1109."  29 U.S.C. § 1132(a)(2).  Second, a plan participant, beneficiary, or fiduciary may sue "(A) to enjoin any act or practice which violates any provision of [ERISA subchapter I] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA subchapter I] or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Plaintiff's complaint here asserts three "Counts," each of which seeks relief through both Section 1132(a)(2) and Section 1132(a)(3).

### B.     The Federal Arbitration Act

Congress passed the FAA in 1925 "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Morgan*, 596 U.S. at 418 (citation omitted). "Congress directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (quoting 9 U.S.C. § 2). The only two exceptions are for grounds that would permit "revocation of any contract" and for arbitrations of certain sexual assault or sexual harassment disputes. 9 U.S.C. §§ 2, 402. The FAA thus "establishes an equal-treatment principle: A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Kindred Nursing*, 581 U.S. at 251 (citation omitted).

In addition to making arbitration agreements enforceable as a substantive matter, the FAA creates procedures to enforce them. When a plaintiff who agreed to arbitrate a dispute nonetheless brings the dispute in court, the court must enter a stay of the litigation until the dispute is resolved in arbitration. 9 U.S.C. § 3; *see Smith v. Spizzirri*, 144 S. Ct. 1173, 1176-1177 (2024). A court may also issue an order compelling a plaintiff to arbitrate a dispute that she agreed to arbitrate. 9

U.S.C. § 4.  In these ways, and others, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'"  *Epic Sys.*, 584 U.S. at 505 (citation omitted).

## II.    Factual Background

### A.    The Employees' Retirement Plan of Duke University

Duke University sponsors the Employees' Retirement Plan of Duke University (the "Plan") to help employees maintain a source of income during retirement.  JA10, ¶¶ 6-7; JA16, ¶ 26.  The Plan is a "defined benefit plan."  JA16, ¶ 27.  A defined benefit plan "generally promises the participant a fixed level of retirement income, which is typically based on the employee's years of service and compensation."  *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 n.1 (2008); *see* 29 U.S.C. § 1002(35).  The Plan's benefit formula fits that description, JA28, ¶ 56, and the amount of money in the Plan has no bearing on the amount of any individual participant's payments.  *Thole*, 590 U.S. at 540 ("In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan.").

A defined benefit plan contrasts with the other type of ERISA retirement plan, a defined contribution plan.  A defined contribution plan "promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those

contributions." *LaRue*, 552 U.S. at 250 n.1; *see also* 29 U.S.C. § 1002(34).  A prime

example of a defined contribution plan is a 401(k) plan.  *See Thole*, 590 U.S. at 540.

Like other ERISA plans, the Plan is maintained pursuant to a written

instrument.  JA16, ¶ 27; JA82-206.  Since 2021, it has contained an arbitration

provision:

> Any claim, dispute, or breach arising out of or in any way
> related to the Plan including, but not limited to, any civil
> action following a denial of a claim after review, breach of
> fiduciary duty, or prohibited transitions, shall be settled
> exclusively by final binding arbitration conducted in
> Durham, North Carolina (or such other major city that is
> nearest to the workplace of the Member) pursuant to the
> Employment Dispute Resolution Rules and Mediation
> Procedures of the American Arbitration Association (the
> "Rules") (available at www.adr.org), except as they are
> modified by the Plan.  Such arbitration shall be held before
> a single neutral arbitrator with substantial experience with
> respect to the Employee Retirement Income Security Act
> of 1974 ("ERISA"), selected in accordance with the Rules.

JA198.  This provision requires arbitration of any claim or dispute "arising out of or

in any way related to the Plan, including . . . breach of fiduciary duty."  *Id.*  The

arbitration must proceed only on an individual basis:  "The Member must bring any

dispute in arbitration on an individual basis only, and not on a class, collective or

representative basis."  *Id.*

### B.    Plaintiff's Allegations

Plaintiff Joy G. Franklin alleges that Defendants Duke University and the

Retirement Board for Duke University violated ERISA by using allegedly

inappropriate actuarial assumptions—specifically, mortality tables—to calculate Plaintiff's retirement benefits. JA8, ¶ 1. The Plan gives participants a choice about how they want to receive their benefits. They can choose to receive a "single life annuity," which is a monthly benefit for the life of the participant. JA10, ¶ 6. Or they can choose to receive their benefits in different forms, such as a "joint and survivor annuity," which provides a monthly benefit for the life of the participant and then, when they die, an annuity for the life of a surviving spouse or beneficiary, set as a percentage of the participant's benefit. *Id.*, ¶¶ 6, 7. For example, a 50% joint and survivor annuity pays the spouse half the amount that the participant received each month if the participant predeceases her spouse. *Id.*, ¶ 7. Converting the amount of a single life annuity into a joint and survivor annuity requires the use of actuarial assumptions about interest rates and life expectancy. *Id.*, ¶ 8. Plaintiff elected and is receiving a 50% joint and survivor annuity, which is calculated using actuarial assumptions set forth in the Plan and provides her an annuity benefit of $1,806.99 per month. JA16, ¶ 25; JA40, ¶ 85.

Plaintiff does not allege that her benefits were calculated incorrectly under the terms of the Plan or that she is entitled to additional benefits under those terms. Instead, the theory of her lawsuit is that ERISA requires the Plan to use different actuarial assumptions that would afford her a higher benefit. JA40, ¶ 85. Specifically, Plaintiff claims that if the Plan calculated her monthly benefit using the

actuarial assumptions that Congress requires plans to use when calculating a different type of benefit (lump sum payments), she would receive $1,871.31 per month. JA32, ¶ 66; JA40, ¶ 85. Plaintiff, however, did not elect to take her benefit as a lump sum; she selected a monthly annuity. Nonetheless, she contends that several ERISA provisions—29 U.S.C. § 1053(a), § 1055(a) and (d), and § 1104(a)— require that her joint and survivor annuity be calculated using the lump-sum actuarial assumptions or something similar to those lump-sum actuarial assumptions. JA45-50, ¶¶ 100-130.

## III. Procedural History

Plaintiff brought this lawsuit on behalf of a putative class of Plan participants and beneficiaries. JA41, ¶ 88. The complaint alleges three counts, with each count invoking two ERISA causes of action, 29 U.S.C. § 1132(a)(2) and § 1132(a)(3), without distinguishing between them. JA45-46, ¶¶ 105-107; JA47-48, ¶¶ 113-115; JA50, ¶¶ 127-129.

Defendants moved to dismiss the complaint. Defendants argued: (1) Plaintiff should be compelled to arbitrate because the Plan's arbitration provision covers all of her ERISA claims in this action; (2) Plaintiff lacked Article III standing to pursue her claims under Section 1132(a)(2); and (3) Plaintiff's allegations fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* JA55-56; JA57-80; JA207-220.

13

On February 29, 2024, the district court issued an order rejecting Defendants' arguments on arbitration and standing, without addressing the Rule 12(b)(6) motion to dismiss.  JA221-222.  The district court concluded that Plaintiff could not be compelled to arbitrate because she did not personally agree to the Plan amendment that added the arbitration provision. JA234.  The court recognized that under Fourth Circuit precedent, ERISA plan sponsors may unilaterally amend plans to add binding, contractual provisions at any time so long as they comply with the plan's requirements for amendments.  JA231 (citing *Plotnick v. Comput. Scis. Corp. Deferred Comp. Plan for Key Execs.*, 875 F.3d 160, 167 (4th Cir. 2017)).  But the court determined that this ERISA rule was overridden by the FAA because arbitration agreements limit plan participants' access to federal courts.  JA234-235, 237-238.

The court also concluded that Plaintiff had sufficiently alleged Article III standing to pursue her claims under Section 1132(a)(2).  JA228-229.  The court acknowledged Supreme Court precedent explaining that Section 1132(a)(2) relief must inure to the benefit of the *plan* and does not provide remedies for individual beneficiaries.  JA227.  But the court decided that such precedent was inapplicable because Plaintiff seeks to recalculate her benefits, which would benefit her individually.  JA228.

Defendants noticed their appeal on March 7, 2024. JA239. The notice indicated Defendants' intention to appeal both aspects of the order (both standing/jurisdiction and arbitration). *Id.* The notice also stated that the action was subject to a mandatory stay pending appeal. *Id.* Four days later, the district court issued an order indicating its "preliminary view" that a stay was mandated as to Plaintiff's Section 1132(a)(3) claims and "likely . . . appropriate" as to the Section 1132(a)(2) claims, too, but the court directed the parties to meet and confer on the scope of the stay. JA251. The parties disagreed and submitted filings articulating their respective positions. *See* JA242-251; JA252-264. The district court adopted Plaintiff's position and declined to stay proceedings on the Section 1132(a)(2) claims. JA265-272. On the same day, the district court issued an order on the Rule 12(b)(6) motion, ruling that Plaintiff had stated a plausible claim for relief on Counts I through III to the extent those claims were brought under Section 1132(a)(2). *See* JA273-283. That order is not within the scope of this appeal, although it confirms that the district court's analysis of the merits of the Section 1132(a)(2) claims addresses the same legal questions that the arbitrator would have to decide in evaluating Counts I through III to resolve the Section 1132(a)(3) claims.

Defendants moved this Court to stay all district court proceedings pending resolution of this appeal. A three-judge panel granted Defendants' stay motion on June 3, 2024. *See* JA207-220.

## SUMMARY OF ARGUMENT

I.      Plaintiff is bound to arbitrate the claims she asserts under 29 U.S.C. § 1132(a)(3).  Fourth Circuit precedent recognizes that the terms of ERISA plans are contractual provisions governed by federal law.  And under federal law, plan terms must be enforced as written, even when they are added to the plan through an amendment.  As long as the amendment complies with the plan's amendment procedures, it becomes a binding part of the plan.

Those well-settled ERISA principles make this a straightforward case under the FAA.  The Supreme Court has instructed courts to enforce arbitration provisions to the same degree that they would enforce other contractual provisions.  Courts may not enact barriers to the formation of arbitration agreements that would not apply to other types of agreements.  Here, however, the district court did just that.  It ruled that the cases recognizing ERISA plan sponsors' ability to amend plan terms should not apply to amendments adding arbitration provisions.  By treating arbitration provisions less favorably than other sorts of ERISA plan provisions, the district court's ruling violates the FAA's prohibition on singling out arbitration provisions for disfavored treatment.

II.     Plaintiff's claims under 29 U.S.C. § 1132(a)(2) do not belong in federal court, either.  The Supreme Court has held that Section 1132(a)(2) authorizes relief only for a plan, as opposed to individual participants, and the Supreme Court has

also held that participants in a defined benefit plan lack standing to seek relief for their plan, as opposed to relief for themselves. Putting these two lines of Supreme Court precedent together means that the only relief available through Section 1132(a)(2)—relief for the Plan itself—is relief that Plaintiff lacks standing to pursue. Here, however, the district court ruled that Plaintiff has standing based on its conclusion that Plaintiff may use Section 1132(a)(2) to pursue relief that benefits her individually. That ruling contradicts Supreme Court precedent holding that individualized relief is not available under Section 1132(a)(2). Under that line of cases, Plaintiff's Section 1132(a)(2) claims should be dismissed for lack of standing.

Alternatively, if individualized relief is possible through Section 1132(a)(2) claims, Plaintiff's individual claims under that provision belong in arbitration. The district court's approach to Plaintiff's Section 1132(a)(2) claims effectively eliminates any distinction between those claims and her Section 1132(a)(3) claims. If that approach is correct, there is no basis to draw a distinction between those two sets of claims for purposes of compelling arbitration.

III.    In all events, Plaintiff's Section 1132(a)(2) claims should not proceed in court until the arbitration of her Section 1132(a)(3) claims has concluded. The FAA mandates a stay of litigation as to any issues that the parties are obligated to arbitrate. There is no way to separate out the issues underlying Plaintiff's Section 1132(a)(3) claims from those that underlie her Section 1132(a)(2) claims. Both sets

of claims rely on the same substantive ERISA provisions and the same factual allegations. The only difference is the cause of action being invoked. So if the Court does not dismiss or compel arbitration of Plaintiff's Section 1132(a)(2) claims, it should make clear that no litigation of those claims may proceed pending arbitration of Plaintiff's Section 1132(a)(3) claims.

## STANDARD OF REVIEW

The Court "review[s] a district court's denial of a motion to compel arbitration de novo." *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020). Similarly, "[t]he existence of standing is a legal issue that [the Court] review[s] de novo." *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 899 (4th Cir. 2022).

## ARGUMENT

### I.   The Plan's arbitration provision is valid and binding and must be enforced under ERISA and the FAA.

"A litigant seeking to compel claims to arbitration under the FAA is obliged to establish that (1) a dispute exists between the parties; (2) the dispute falls within the scope of a written, valid agreement that includes an arbitration provision; (3) the parties' agreement relates to interstate or foreign commerce; and (4) the opposing party has failed or refused to arbitrate the dispute at hand." *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 595 (4th Cir. 2023). Here, the parties' disagreement over these requirements is narrow. The only disagreement is whether Plaintiff is bound by the arbitration provision in the Plan. The Plan's arbitration provision

encompasses Plaintiff's claims under 29 U.S.C. § 1132(a)(3).  *See* JA198.  And ERISA plans relate to interstate commerce.  *See* 29 U.S.C. § 1001(a).  Because the Plan's arbitration provision is valid and binding as a matter of federal law, the FAA requires its enforcement.

### A.    Provisions in ERISA plans, including plan amendments, are binding contractual commitments.

It is well settled that "ERISA plans are contractual documents."  *Haley*, 77 F.3d at 88; *see also, e.g.*, *Ret. Comm. of DAK Ams. LLC v. Brewer*, 867 F.3d 471, 479 (4th Cir. 2017) ("ERISA plans are contracts[.]"); *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 340 (4th Cir. 2000) (recognizing that ERISA plans are "contractual documents").  And "[c]ourts construe ERISA plans, as they do other contracts, by 'looking to the terms of the plan.'"  *US Airways*, 569 U.S. at 102 (citation omitted).  ERISA plans are a creature of federal law rather than state law and thus are governed by federal law, including "the federal common law of contracts."  *Denzler*, 80 F.3d at 101; *see also, e.g.*, *Plotnick*, 875 F.3d at 166 ("This court 'applies the federal common law of contracts to interpret ERISA plans." (citation omitted)); *Ret. Comm. of DAK Ams.*, 867 F.3d at 480.

The Supreme Court has rejected attempts to override ERISA plan terms.  For instance, in *US Airways*, the Court held that equitable defenses could not "overrid[e] plain contract terms" set forth in the plan documents.  569 U.S. at 101.  And in *Heimeshoff*, 571 U.S. at 109, the Court rebuffed an argument that ERISA's remedial

scheme overrode a plan's contractual limitations period for filing suit under 29 U.S.C. § 1132(a)(1)(B).  In both cases, the Court emphasized that "[t]he plan . . . is at the center of ERISA."  *Heimeshoff*, 571 U.S. at 108 (quoting *US Airways*, 569 U.S. at 101).  Once a plan is established, the fiduciary's "duty is to see that the plan is 'maintained pursuant to [that] written instrument.'"  *Id.* (quoting 29 U.S.C. § 1102(a)(1)); *see also* 29 U.S.C. § 1104(a)(1)(D) (obligating fiduciaries to act "in accordance with the documents and instruments governing the plan" unless they conflict with other ERISA requirements).

In these ways, and others, ERISA's "statutory scheme . . . is built around reliance on the face of written plan documents."  *US Airways*, 569 U.S. at 100-101 (citation omitted).  Thus, "the plain language of an ERISA plan must be enforced in accordance with 'its literal and natural meaning.'"  *United McGill Corp. v. Stinnett*, 154 F.3d 168, 172 (4th Cir. 1998); *accord Ret. Comm of DAK Ams.*, 867 F.3d at 480.  By requiring "[t]his focus on the written terms of the plan," the statute helps to instill predictability and avoid "unduly discourag[ing] employers from offering ERISA plans in the first place.'"  *Heimeshoff*, 571 U.S. at 108 (citation and brackets omitted).

ERISA case law also recognizes that sponsors of ERISA plans have wide leeway to amend the plan terms.  "Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate

[ERISA] plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). "When employers undertake those actions, they do not act as fiduciaries." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). For this reason, "the act of amending a pension plan does not trigger ERISA's fiduciary provisions." *Id.* at 891. Still, to be valid, "any modification to a plan must be implemented in conformity with the formal amendment procedures and must be in writing." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58-59 (4th Cir. 1992); *accord Ret. Comm. of DAK Ams.*, 867 F.3d at 480. A written amendment is valid if the employer "amended the Plan in accordance with the Plan's plain text." *Plotnick*, 875 F.3d at 167.

### B.    The FAA and ERISA require the Plan's arbitration provision to be enforced to the same degree as any other plan provision.

As the district court recognized, the Plan here "was amended in accordance with its terms and was effective when [Plaintiff] filed this suit." JA230. Because there is no disagreement about whether the arbitration provision would encompass the parties' dispute under 29 U.S.C. § 1132(a)(3), the only question is whether something in the FAA or ERISA precludes its enforcement. The answer is no. Both statutes require enforcing the arbitration provision. *See, e.g.*, *Epic Sys.*, 584 U.S. at 506 (The FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms.'" (citation omitted)); *United McGill*, 154 F.3d at 172 ("[T]he plain language of an ERISA plan must be enforced in accordance with 'its literal and natural meaning.'" (citation omitted)).

The district court concluded otherwise by highlighting the principle that "[a]rbitration is a matter of contract." *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020). But that principle is no obstacle here. Under applicable federal law as just described, the Plan amendment is a valid and binding contract. The district court did not hold—and could not have held—that the Plan amendment was invalid under the standards that govern ERISA plan amendments. On the contrary, the court recognized that the amendment complied with Plan requirements. JA230 & n.4.

The court instead assessed the Plan amendment as though the contract at issue were not an ERISA plan but a run-of-the-mill contract governed by North Carolina law. JA233-234. That was error, as an initial matter, because ERISA plans are governed by federal law. *Plotnick*, 875 F.3d at 166; *Ret. Comm. of DAK Ams.*, 867 F.3d at 480.[1] The court similarly erred in citing North Carolina law to characterize the ability to amend ERISA plan provisions as a sign that the agreement is "illusory." JA233-234; JA237. As a matter of federal law, the ability to amend an ERISA plan in accordance with its amendment procedures does not make the plan's promises

---

[1] Although courts in FAA cases generally apply "ordinary state-law principles that govern the formation of contracts," *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), that is because such courts generally confront ordinary state-law contracts, not ERISA plans. There is no basis to apply state-law contract-formation principles to ERISA plans or amendments. Indeed, if state law attempted to regulate the validity or enforceability of an ERISA plan, it would be preempted by ERISA's express preemption provision. *See* 29 U.S.C. § 1144(a) (preempting "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" subject to ERISA).

"illusory." *Plotnick*, 875 F.3d at 167. The arbitration amendment here, just like any other amendment, was implemented according to the procedures in the Plan documents and therefore is enforceable as to any claims participants filed from that date forward.

Moreover, contrary to the district court's portrayal, Defendants do not have "an unlimited right to determine the nature or extent of [their] performance." *Wellington-Sears & Co. v. Dize Awning & Tent Co.*, 147 S.E. 13, 15 (N.C. 1929).[2] If a Plan participant files a demand to arbitrate a covered dispute with the American Arbitration Association, Defendants would be obligated to arbitrate. *See* JA198. Under ERISA and the Plan's terms, eliminating the arbitration provision from the Plan would require going through the Plan's amendment procedures, just like any other Plan amendment. But the mere ability to amend ERISA plan terms does not make their promises illusory. *See Spacek v. Mar. Ass'n*, 134 F.3d 283, 298 (5th Cir. 1998) ("[C]onstruing a broad amendment provision in a pension plan governed by ERISA as allowing the plan administrators to adopt any amendment that comports with ERISA's statutory requirements does not render the employer's obligations under the plan illusory because the plan administrators are bound to exercise their amendment power in a manner that comports with ERISA's minimum statutory

---

[2] The district court also cited *JRM, Inc. v. HJH Cos., Inc.*, 883 S.E.2d 217, 219 (N.C. Ct. App. 2023), but it does not address the illusory promise doctrine.

requirements."), *abrogated in part on other grounds by Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004).[3]

The district court recognized many of these principles but held that the legal standards for all other ERISA plan amendments do not apply to amendments implicating "arbitration provisions or the FAA." JA235. It cited another district court case that similarly held that "the power to unilaterally modify ERISA plans does not extend to arbitration agreements." *Platt v. Sodexo, S.A.*, No. 22-cv-2211, 2023 WL 4832660, at *4 (C.D. Cal. July 25, 2023). The implication is that more is needed to add an arbitration provision to an ERISA plan than another type of plan provision.

Such reasoning turns the FAA upside down. The FAA "requires courts to place arbitration agreements 'on equal footing with all other contracts.'" *Kindred Nursing*, 581 U.S. at 248. For this reason, a contract-formation "rule that singles out arbitration agreements for disfavored treatment . . . violates the FAA." *Id.* The rule

---

[3] Even under North Carolina law, the illusory promise doctrine would not bar enforcement of an arbitration agreement unilaterally added to an agreement because any hypothetical future changes to that agreement would be constrained by other legal requirements. *Canteen v. Charlotte Metro Credit Union*, 900 S.E.2d 890, 897 (N.C. 2024) (finding that the implied covenant of good faith and fair dealing constrained promisor's ability to unilaterally amend the parties' agreement with an arbitration provision and thus "remedie[d] any purported issues of illusoriness which may arise from a change-of-terms clause"). The *Canteen* decision was issued after the filing of this appeal, and thus the district court did not have the benefit of that decision at the time of its order. *See* JA6.

in *Kindred Nursing* was a state law that made it harder to form arbitration agreements than other sorts of contracts. *Id.* The Supreme Court held that this state law "fail[ed] to put arbitration agreements on an equal plane with other contracts" and so was invalid under the FAA. *Id.* at 252. Similarly, here, it violates the FAA to deny enforcement of the Plan's arbitration provision because it is an arbitration provision.[4]

The district court also invoked ERISA's general statement of policy, which explains that the statute (among many other goals) aims to "provid[e] for . . . ready access to the Federal courts." 29 U.S.C. § 1001(b); *see* JA235-236. But that general statement does not impose limits on arbitration. It most naturally just refers to ERISA's provision creating federal court jurisdiction and venue for ERISA claims. *See* 29 U.S.C. § 1132(e).

Indeed, ample precedent refutes the notion that Section 1001(b)'s reference to federal court access is in tension with enforcing arbitration agreements. Two circuits have rejected that argument. *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 120 (2d Cir. 1991); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 478-479 (8th Cir. 1988). And two other circuits initially endorsed the district

---

[4] In addition, the Supreme Court has rejected the suggestion that the FAA always requires personal assent to an arbitration provision. Even as to someone not a party to the contract, the FAA is no impediment to enforcing an arbitration provision if the provision is enforceable under applicable principles of contract law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009) ("If a written arbitration provision is made enforceable against . . . a third party under state contract law, the [FAA]'s terms are fulfilled.").

25

court's interpretation of Section 1001(b), but later overruled those decisions as incompatible with Supreme Court precedent. *See Amaro v. Cont'l Can Co.*, 724 F.2d 747, 750 (9th Cir. 1984), *overruled by Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019); *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 941 (3d Cir. 1985), *overruled by Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993); *cf. Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 481-482 (1989) (concluding that statute's "broad venue provisions in the federal courts" did not limit arbitration of Securities Act claims).

Courts now recognize that ERISA claims are appropriate for arbitration and that nothing in the statute suggests otherwise. *See Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 620 (7th Cir. 2021) ("Joining every other circuit to consider the issue, we recognize that ERISA claims are generally arbitrable." (collecting cases)). As with any other federal statute, only "a clear and manifest congressional command" in ERISA could "displace" the FAA. *Epic Sys.*, 584 U.S. at 511. But far from displacing the FAA, ERISA defers to it. ERISA states that it may not "be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States," 29 U.S.C. § 1144(d), which would include the FAA. The FAA, as discussed above, invalidates any legal rule that subjects arbitration agreements to "disfavored treatment," even when the rule is designed "to safeguard a person's 'right to access the courts.'" *Kindred Nursing*, 581 U.S. at 252 (citation omitted).

26

Courts therefore may not construe ERISA's general reference to promoting federal court access as imposing heightened requirements for arbitration provisions. Doing so would conflict with the FAA—and with ERISA's own policy of enforcing ERISA plans as written. *See Heimeshoff*, 571 U.S. at 108.

Although few courts have addressed whether arbitration provisions in ERISA plans are binding on plan participants, several have addressed the related question for forum-selection clauses and answered in the affirmative. Because "an arbitration agreement is 'a specialized kind of forum-selection clause,'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)), these cases are instructive and indeed dispositive here.

The Sixth Circuit, for example, acknowledged that "[t]he 'large leeway' granted to employers in the design of pension plans" includes the ability to include binding forum-selection clauses. *Smith*, 769 F.3d at 930 (citation omitted). That was true in *Smith* even though the employer unilaterally added the forum-selection clause, without the plaintiff's assent, "seven years after his benefits commenced." *Id.* at 930. The Seventh Circuit likewise upheld enforcement of a forum-selection clause, despite objections that it was included in the plan without "arm's-length bargaining," because "an ERISA plan is nonetheless a contract." *In re Mathias*, 867 F.3d at 731.

This Court has not yet addressed whether forum-selection clauses in ERISA plans are enforceable.  But district courts in this Circuit have held that they are, consistent with the appellate cases discussed above.  *See, e.g.*, *Smith v. Aegon USA, LLC*, 770 F. Supp. 2d 809, 812 (W.D. Va. 2011) (enforcing forum-selection clause added through a plan amendment and explaining that participant's "consent to any modifications to her policy was not necessary" under ERISA); *Manuel-Clark v. Manpowergroup Short-Term Disability Plan*, No. 19-cv-147, 2019 WL 5558406, at *2 (E.D.N.C. Oct. 28, 2019) (enforcing forum-selection clause in ERISA plan and explaining that "[a]bsent fraud, it is irrelevant that plaintiff was not aware of the clause when she filed this suit").

The Ninth Circuit has also held forum-selection clauses enforceable and recognized that the same logic would apply if an ERISA plan "foreclosed access to any federal court through an arbitration clause." *In re Becker*, 993 F.3d at 733 (citing *Dorman*, 934 F.3d at 1109).  The Sixth Circuit likewise recognized in *Smith* that there is no ground to treat the enforceability of arbitration provisions in ERISA plans differently than that of forum-selection clauses.  769 F.3d at 932.  In fact, the dissenting judge in *Smith* suggested that allowing a plan to mandate arbitration was an *easier* question than allowing a plan to restrict venue to a specific geographic location.  *Id.* at 935 (Clay, J., dissenting).  After all, courts "enforce arbitration

agreements . . . not based on some general policy favoring forum selection clauses, but because that is what the [FAA] requires." *Id.*

Here, the FAA requires enforcing the arbitration provision in Plaintiff's plan. It is a binding contractual provision under ERISA and federal law—no less than a forum-selection clause added through a similar amendment would be—and neither the FAA nor ERISA provide a basis for setting it aside. Plaintiff's Section 1132(a)(3) claims, at a minimum, should be compelled to arbitration.

## II. Plaintiff's Section 1132(a)(2) claims should either be dismissed for lack of standing or, in the alternative, compelled to arbitration.

Plaintiff's Section 1132(a)(2) claims do not belong in federal court, either. The Supreme Court has held that Section 1132(a)(2) "does not provide a remedy for individual beneficiaries." *Varity*, 516 U.S. at 515. Instead, the plain language of Section 1132(a)(2) and the ERISA provision it enforces, 29 U.S.C. § 1109, provide remedies for *plans*. *Russell*, 473 U.S. at 141, 144 ("Congress did not intend [29 U.S.C. § 1109] to authorize any relief except for the plan itself.").

This aspect of Section 1132(a)(2) dooms Plaintiff's Section 1132(a)(2) claims. Binding Supreme Court precedent holds that participants in defined benefit plans—like Plaintiff here—lack Article III standing to obtain recovery on behalf of their plan (unless the plan's mismanagement has brought it to the brink of failure). *See Thole*, 590 U.S. at 546. So Plaintiff lacks standing to bring her Section 1132(a)(2) claims, which are limited to recovery on behalf of the Plan. *See Duke v.*

29

*Luxottica U.S. Holdings Corp.*, No. 21-cv-6072, 2023 WL 6385389, at *1 (E.D.N.Y. Sept. 30, 2023) (dismissing Section 1132(a)(2) claims for lack of standing and compelling Section 1132(a)(3) claims to arbitration in case challenging actuarial assumptions used to calculate joint and survivor annuities); *cf. Spizzirri*, 144 S. Ct. at 1176 n.2 (recognizing courts' authority to dismiss for lack of jurisdiction when entertaining an arbitration motion under the FAA).

Despite this, the district court found that Plaintiff has standing to pursue these claims by holding that she can use Section 1132(a)(2) to increase the amount of benefits she personally receives under the Plan. That holding violates the Supreme Court's interpretation of Section 1132(a)(2) as limited to relief for the plan, rather than individual participants. But if the district court were correct, that would only mean that Plaintiff's Section 1132(a)(2) claims are claims for individual relief that she must pursue in arbitration, just as she must pursue her Section 1132(a)(3) claims for individual relief in arbitration.

Plaintiff is on the horns of a dilemma. To the extent her Section 1132(a)(2) claims seek relief for the Plan, she lacks standing. To the extent these claims seek relief for Plaintiff herself, she is bound to arbitrate them. Either way, Plaintiff may not litigate her Section 1132(a)(2) claims in court.

**A.      Plaintiff lacks standing to seek relief for the Plan.**

In *Thole*, the Supreme Court explained that participants in a defined benefit plan are entitled to the benefits the plan promises them.  590 U.S. at 540.  If a plan breaches that promise, the participant may sue under 29 U.S.C. § 1132(a)(1)(B) "to recover the benefits due to them."  *Id.* at 542.  But because the amount of a participant's benefits under a defined benefit plan is governed by the terms of the plan regardless of the level of plan assets, participants have no "concrete stake" in any recovery to the plan and no "property interest" in the plan's assets.  *Id.* at 541-543, 545; *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-440 (1999) (recognizing that participants in defined benefit plans have no "claim to any particular asset that composes a part of the plan's general asset pool").  Put simply, an increase in a defined benefit plan's assets does not translate to an increase in a participant's benefits.  *Thole*, 590 U.S. at 543 (recognizing that "the outcome of this suit [asserting Section 1132(a)(2) claims] would not affect [the plaintiffs'] future benefit payments").

In the *Luxottica* decision, the district court held that *Thole* required dismissal of Section 1132(a)(2) claims indistinguishable from Plaintiff's claims here.  The court recognized that the benefits the plaintiff received through her defined benefit plan were "not tied to the value of the plan."  2023 WL 6385389 at *6 (quoting *Thole*, 590 U.S. at 543).  "So, whether or not she secure[d] recovery *for the Plan*—

31

the only form of recovery she can seek under [29 U.S.C. § 1109(a) and § 1132(a)(2)]—she [would] 'still receive the exact same monthly benefits that [she was] already slated to receive.'" *Id.* (quoting *Thole*, 590 U.S. at 541). Even though the plaintiff argued that she sustained monetary injury from the plan's actuarial assumptions and sought a higher personal benefit, the court found that this argument "conflate[d] her standing to pursue individual relief via [29 U.S.C. § 1132(a)(3)] with the limitation that relief under [29 U.S.C. § 1109(a) and § 1132(a)(2)] is limited to recovery for the Plan." *Id.*

Here, the district court disagreed with *Luxottica*'s analysis, suggesting that *Luxottica* overlooked the participant's ability to obtain the equitable remedy of "reformation" under Section 1132(a)(2). JA228 & n.2. In the district court's view, Section 1132(a)(2) might provide relief to someone like Plaintiff in two steps: by ordering Defendants to recalculate her benefits through a reformation of the Plan's terms and increasing the amount of assets in the Plan to pay for the increased benefits. JA226-227.

The problem with the district court's suggestion is that Section 1132(a)(2) does not permit relief that benefits individual participants like Plaintiff but not the Plan itself. *See Russell*, 473 U.S. at 141, 144; *Varity*, 516 U.S. at 515; *LaRue*, 552 U.S. at 256 (reiterating that Section 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries"). Plaintiff's objective through this

32

litigation—as described by the district court in its discussion of plan "reformation"—is to change the terms of the Plan to provide higher benefits for herself and other individual participants like her. Yet Plaintiff cannot explain how changing the terms of the Plan's benefit calculations to increase the amount of specific participants' benefits provides relief for the Plan itself. On the contrary, if anything, requiring the Plan to pay higher benefits to these individuals would *reduce* the Plan's assets. And even if those higher payments could be offset through an increase in contributions, that still works to the benefit of the individuals, not the Plan.

The district court suggested that such relief benefits the Plan by bringing it into compliance with ERISA's alleged actuarial equivalence requirements. JA227-228. But such a suggestion, if adopted, would destroy the Supreme Court's distinction between relief for the plan and relief for individuals. Any time an individual establishes an ERISA violation, she could argue that providing relief would benefit the plan by restoring statutory compliance.

Consider, for example, the plaintiffs in *Varity*. They alleged that the fiduciaries of their ERISA plan violated their fiduciary duties under 29 U.S.C. § 1104 (which is one of the three substantive provisions that Plaintiff claims was violated here) by tricking them into withdrawing from the plan. 516 U.S. at 492. The Supreme Court affirmed an order requiring the plaintiffs' reinstatement into the

plan, but it did so as a remedy under Section 1132(a)(3) because individualized remedies are not available under Section 1132(a)(2). *Id.* at 515 (Plaintiffs "could not proceed under the second subsection [Section 1132(a)(2)] because that provision, tied to [Section 1109], does not provide a remedy for individual beneficiaries. . . . They must rely on the third subsection [Section 1132(a)(3)] or they have no remedy at all."). Under the district court's approach, that conclusion would have to be wrong. After all, reinstating the employees repaired the statutory violation and restored the plan's compliance with ERISA. *Varity* instead takes a practical approach to distinguishing between relief for the plan and relief for individuals. Here, as there, the objective of the litigation is to benefit particular individuals, not the ERISA plan. Section 1132(a)(2) does not provide a cause of action for such relief.[5]

The district court also erred in presuming that the remedy of "reformation"—which involves changing the terms of the Plan—is available under Section 1132(a)(2). The Supreme Court has treated reformation of plan terms as an equitable

---

[5] The district court held that *Varity* and *Russell* are inapplicable because of the particular type of ERISA violation that Plaintiff alleges—breach of "actuarial equivalence requirements." JA227-228. There is no basis for distinguishing *Varity* and *Russell* on such grounds. Nothing in those decisions or the statute suggests that the Supreme Court's construction of Sections 1132(a)(2) and 1109(a) is limited to ERISA violations of a specific type. In fact, both *Varity* and *Russell* involved alleged violations of 29 U.S.C. § 1104, which as noted is one of the three substantive statutory provisions that Plaintiff alleges was violated here.

remedy to be sought under Section 1132(a)(3). *See CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011). That makes sense. Section 1132(a)(3) authorizes individualized relief for breach of fiduciary duty—namely, "an award to 'participants and beneficiaries,' rather than to the 'plan.'" *Varity*, 516 U.S. at 510. So Section 1132(a)(3) is the proper source of fiduciary-breach remedies that would benefit a subset of participants and beneficiaries (like reformation for Plaintiff's benefit here) and not the defined benefit plan as whole.

Moreover, the fact that the Supreme Court viewed reformation as a Section 1132(a)(3) remedy in *CIGNA* means that reformation must *not* be available under Section 1132(a)(2). If reformation were available under Section 1132(a)(2), it could no longer be available under Section 1132(a)(3). That is because the Supreme Court has construed Section 1132(a)(3) as a fallback source of relief that applies when the other causes of action do not supply adequate relief. When another subsection in Section 1132(a) "provide[s] adequate relief for a beneficiary's injury," awarding such relief under Section 1132(a)(3) is not "appropriate." *Varity*, 516 U.S. at 515 (citation omitted); *cf. LaRue*, 552 U.S. at 258 (Roberts, C.J., concurring in part and concurring in the judgment) ("[W]e have held that relief is not 'appropriate' under § [1132](a)(3) if another provision, such as § [1132](a)(1)(B), offers an adequate remedy.").

Because relief for individual participants like Plaintiff—changing Plan terms to increase their pension payments—does not benefit the Plan itself, Plaintiff cannot obtain such relief through Section 1132(a)(2).  And because relief for the Plan itself would not affect the amount of Plaintiff's benefit, she has no concrete stake in such relief and no standing under Article III to pursue it, just like the plaintiffs in *Thole*.  Plaintiff's Section 1132(a)(2) claims should therefore be dismissed for lack of jurisdiction.

### B.    Alternatively, if Plaintiff has standing to sue for individualized relief under Section 1132(a)(2), those claims must be arbitrated.

In the alternative, if the district court was right to conclude that Plaintiff may use Section 1132(a)(2) to obtain relief that benefits her personally, those Section 1132(a)(2) claims must proceed to arbitration along with her Section 1132(a)(3) claims.  The district court's approach collapses the distinction between the Section 1132(a)(2) and (a)(3) relief.  But if there is no distinction, the Plan's arbitration provision covers both sets of claims.  *See* JA198.

The district court's order characterized Defendants as having conceded that Plaintiff's Section 1132(a)(2) claims are not arbitrable.  JA229 & n.3.  That is not an accurate characterization of Defendants' position.  On the contrary, Defendants' briefing below stated that "*none* of [Plaintiff's] claims belongs in this Court because she is subject to a binding arbitration agreement covering *all* of the ERISA claims in this case."  JA65 (emphasis added); JA59 ("Plaintiff's claims are subject to

mandatory individual arbitration pursuant to the terms of the Plan."); JA55 (moving for an "order compelling *this action* to individual arbitration" (emphasis added)); JA214 (arguing that "Plaintiff's claims should be compelled to arbitration," without differentiating between the Section 1132(a)(2) and (a)(3) claims).

At most, the district court points to defense counsel's acknowledgment—in response to the court's questioning at oral argument—that Section 1132(a)(2) claims, properly construed, are representative claims to be brought on behalf of the plan.  The district court was asking about the Plan arbitration provision's language requiring that participants "must bring any dispute in arbitration on an individual basis only, and not on a class, collective or representative basis."   JA198.  Defendants never conceded that Plaintiff may use Section 1132(a)(2) to obtain individualized relief and yet avoid arbitration because of the Plan provision's representative action waiver.  Rather, Defendants' contention was that regardless of the representative action waiver, Plaintiff lacks standing to pursue any Section 1132(a)(2) claims because they are representative claims that would not benefit her personally.[6]

---

[6] *See* JA294-295 (defense counsel arguing that Section 1132(a)(2) remedies are not remedies for individual participants but for the Plan itself); JA290; JA295-296 (defense counsel arguing that defined benefit plan participants do not have standing to seek greater employer contributions for the plan); JA348 (defense counsel arguing that the Plan's authorization of litigation of claims on a "representative action basis" refers to Section 1132(a)(2) claims as a representative of the Plan, which "Plaintiff doesn't have Article III standing to bring").

If Defendants are wrong about Plaintiff's ability to pursue individualized relief under Section 1132(a)(2), such claims can proceed on an individual basis and thus fall within the scope of the arbitration provision—just like Plaintiff's Section 1132(a)(3) claims based on the same alleged violations of the statute. If the Court does not dismiss the Section 1132(a)(2) claims for lack of standing, it should compel those claims to individual arbitration.

### III.   In all events, the district court should not be allowed to adjudicate the Section 1132(a)(2) claims until the arbitration has concluded.

Even if the Court were to compel Plaintiff's Section 1132(a)(3) claims to arbitration without dismissing or compelling arbitration of her Section 1132(a)(2) claims, the Court should make clear that any litigation of the latter claims must await the outcome of arbitration. Under the FAA, a district court "shall on application of one of the parties stay the trial of the action" to the extent the action turns "upon any issue referable to arbitration under [the parties'] agreement." 9 U.S.C. § 3. This is a mandatory obligation "impervious to judicial discretion." *Spizzirri*, 144 S. Ct. at 1177 (citation omitted).

Here, a ruling that Plaintiff's Section 1132(a)(3) claims must be arbitrated requires a stay of any Section 1132(a)(2) claims that remain in the action. Litigation of the Section 1132(a)(2) claims would involve the same issues that must be arbitrated through Plaintiff's Section 1132(a)(3) claims. Because 9 U.S.C. § 3 indicates "that arbitrability is to be determined on an issue-by-issue basis, without

regard to the way that the issues are grouped into claims," *Summer Rain v. Donning Co./Publ'rs, Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992), the district court must stay litigation of any legal and factual issues common to both claims.

The substantive legal and factual issues underlying Plaintiff's Section 1132(a)(2) claims are identical to those that underlie her Section 1132(a)(3) claims. Plaintiff's complaint does not plead separate counts under Sections 1132(a)(2) and 1132(a)(3). Rather, the three counts in the complaint are equally brought under both Section 1132(a)(2) and Section 1132(a)(3), and each cause of action thus rests on the same allegations that Plaintiff contends violated the underlying ERISA provisions, 29 U.S.C. § 1055(a) and (d), 29 U.S.C. § 1053(a), and 29 U.S.C. § 1104(a)(1). JA45-50, ¶¶ 100-130. It is no surprise, then, that the district court's order declining to dismiss the Section 1132(a)(2) claims under Rule 12(b)(6) decided the same legal issues that will have to be decided by the arbitrator who evaluates the same substantive ERISA provisions under Section 1132(a)(3). *See* JA275-282. Litigating Plaintiff's Section 1132(a)(2) claims would have direct implications for the arbitration of her Section 1132(a)(3) claims and, vice versa, arbitrating the latter would have direct implications for the litigation of the former. Because the substantive issues for each claim are the same, the FAA requires a stay of litigation of any surviving Section 1132(a)(2) claims "until such arbitration has been had [on

the Section 1132(a)(3) claims] in accordance with the terms of the agreement."  9 U.S.C. § 3.

But even if the district court had discretion over the matter, the extreme overlap between Plaintiffs' Section 1132(a)(2) and Section 1132(a)(3) claims would warrant a stay nonetheless.  Arbitrating the Section 1132(a)(3) claims may obviate the need to litigate the Section 1132(a)(2) claims.  If Plaintiff is made whole in individual arbitration on her Section 1132(a)(3) claims—or if the arbitrator finds no ERISA violations—her Section 1132(a)(2) claims would be either moot or precluded.  In this scenario, it makes sense to stay the whole case, for the reasons this Court explained in *Summer Rain*.  There, as here, the arbitration had the potential to render litigation of any non-arbitrable issues unnecessary.  964 F.2d at 1461.  The Court therefore determined "that litigation on the non-arbitrable issues which depend on arbitrable issues should be stayed pending arbitration."  *Id.*  Numerous courts have since applied *Summer Rain* to stay non-arbitrable claims that depended on arbitrable issues.  *See, e.g.*, *Dalton v. Dow Chem. Co.*, No. 18-cv-1494, 2019 WL 2427236, at *3 (S.D.W. Va. June 10, 2019) (staying aiding-and-abetting claim pending arbitration of underlying wrongful termination claim); *Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*, 250 F. Supp. 3d 13, 27 (E.D. Va. 2017) (staying litigation of "closely related" issues because arbitration might "resolve some of the pending claims" and "collateral estoppel (issue preclusion) might apply"); *JER, LLC*

*v. Burchfield Automation, L.L.C.*, No. 14-cv-3253, 2015 WL 13649450, at *3 (D. Md. Apr. 16, 2015) (staying litigation of non-arbitrable issues that depended on the outcome of arbitrable issues).

The same logic applies here. The Plan's arbitration provision encompasses the issues of Defendants' alleged violations of Sections 1053(a), 1055(a) and (d), and 1104(a)(1). If the arbitrator rules that Defendants have not violated these ERISA provisions, Defendants can seek judicial confirmation of the arbitral ruling and obviate any need to consider whether Plaintiff may obtain a personal recovery through Section 1132(a)(2) for the same alleged violations. Alternatively, if the arbitrator finds that Defendants violated Sections 1053(a), 1055(a) and (d), and 1104(a)(1) and orders that Defendants recalculate Plaintiff's benefits under Section 1132(a)(3), Plaintiff will lack standing to pursue any further relief in the district court because such further relief will not benefit her personally. Under *Summer Rain*, the extreme overlap between Plaintiff's two causes of action warrants a stay if the Section 1132(a)(2) claims are not dismissed or compelled to arbitration in their own right.

## CONCLUSION

For all these reasons, the Court should reverse the order of the district court.

41

Dated:  July 15, 2024

DIXIE T. WELLS
ELLIS & WINTERS LLP
300 North Greene Street, Suite 800
Greensboro, NC  27401
(336) 217-4197

Respectfully submitted,

s/ Jeremy P. Blumenfeld

JEREMY P. BLUMENFELD
MARY ANN F. MCNULTY
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA  19103
(215) 963-5000

MICHAEL E. KENNEALLY
ABBEY M. GLENN
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 739-3000

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because, excluding the portions of the document exempted by Rule 32(f), it contains 9,912 words.

This brief complies with the typeface and type-style requirements of Rules 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface, Times New Roman 14-point font.


Dated:  July 15, 2024                s/ Jeremy P. Blumenfeld
                                     JEREMY P. BLUMENFELD

                                     *Counsel for Defendants-Appellants*